**ANTHONY E. COLOMBO JR.**
California State Bar No. 218411
The Senator Building, 3rd Fl.
105 West "F" Street
San Diego, CA 92101
(619) 236-1704 / Fax: (619) 236-1852
E-Mail: anthonycolombolegal@yahoo.com

Attorney for Mr. Eduardo Castro

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 08CR0881-W |
| | ) |
| Plaintiff, | ) DATE: May 12, 2008 |
| | ) TIME: 2:00 P.M. |
| v. | ) |
| | ) |
| EDUARDO CASTRO, | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF** |
| Defendant. | ) **DEFENDANT'S MOTIONS** |
| | ) |
| | ) |

### STATEMENT OF FACTS[1]

On March 12, 2008, at approximately 6:00 a.m., Immigration and Customs Enforcement Agents executed a search warrant at a residence located on Via Capri Street in Chula Vista. Present at the address was a male later identified as Eduardo Castro. Mr. Castro was detained, and interrogated as to his legal status in the United States. It was determined that Mr. Castro was illegally in the United States, and he was placed under arrest.

Mr. Castro was then transported to the San Ysidro port of entry for processing. Mr. Castro was allegedly advised of his <u>Miranda</u> rights, and then allegedly waived those rights and confessed to having

---

[1]     Mr. Castro reserves the right to take a contrary position to the statement of facts as discovery is provided.

1   entered the United States illegally.  On April 21, 2008, Mr. Castro was indicted by the January 2007

2   Grand Jury for being a Deported Alien Found in the United States, in violation of  8 U.S.C. § 1326(a),

3   and (b).

4                                               **MOTIONS**

5                                                   **I.**

6          **THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE
        INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY RUN AFOUL**

7              **OF BOTH *NAVARRO-VARGAS* AND *WILLIAMS***

8   **A.**          **Introduction.**

9          The indictment in the instant case was returned by the January 2007 grand jury.  That grand

10  jury was instructed by the Honorable Larry A. Burns, United States District Court Judge on January 11, 2007.

11  See Reporter's Partial Transcript of the Proceedings, dated January 11, 2007, a copy of which is attached

12  hereto as Exhibit A.  Judge Burns' instructions deviate from the instructions at issue in the major Ninth

13  Circuit cases challenging a form grand jury instruction previously given in this district in several ways.[2]

14         After repeatedly emphasizing to the grand jurors that probable cause determination was their

15  sole responsibility, see Ex. A at 3, 3-4, 5,[3] Judge Burns instructed the grand jurors that they were forbidden

16  "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should

17  be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you."

18  See id. at 8.  The instructions go beyond that, however, and tell the grand jurors that, should "you disagree

19  with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting

20  even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence

21  may be insufficient.'"  *See id.* at 8-9.  Thus, the instruction flatly bars the grand jury from declining to indict

22  because the grand jurors disagree with a proposed prosecution.

23

24         [2]    See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v.

25  Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas
    II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v.

26  Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).  Mr. Castro has already moved to dismiss under these
    cases, but has acknowledged that the rulings in them did not support his position.  Having actually read the

27  2007 instructions, Mr. Castro now believes that those cases do not permit the excesses here.

28         [3]    See also id. at 20 ("You're all about probable cause.").

Immediately before limiting the grand jurors' powers in the way just described, Judge Burns referred to an instance in the grand juror selection process in which he excused three potential jurors. See id. at 8.

> I've gone over this with a couple of people. You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

Id. That "principle" was Judge Burns' discussion of the grand jurors' inability to give effect to their disagreement with Congress. See id. at 8-9.[4] Thus, Judge Burns not only instructed the grand jurors on his view of their discretion; he enforced that view on pain of being excused from service as a grand juror.

In addition to his instructions on the authority to choose not to indict, Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause. See id. at 20.[5]

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence*.

Id. (emphasis added).[6] The district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you." See id. at 27.

This motion follows.

**B.**       ***Navarro-Vargas* Establishes Limits on the Ability of Judges to Constrain the Powers of the Grand Jury.**

---

[4]    Counsel has ordered the grand jury selection transcript. Counsel understands that the court reporter has refused the prepare the transcript. This Court should order that the transcript be prepared. Because Fed.R.Crim.P. 6 permits challenges to grand jurors by the parties, the selection process cannot be secret. At any rate, this Court should also order disclosure under rule 6(e).

[5]    These instructions were provided in the midst of several comments that praised the United States attorney's office and prosecutors in general.

[6]    The "in most instances" language suggests that there may be some limit on this principle. Again, counsel has ordered the full transcript, and it will likely resolve the question posed in the instant footnote.

1

2          The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given

3   to grand jurors in the Southern District of California.  See Navarro-Vargas II, 408 F.3d 1184.  While the

4   Ninth Circuit has thus far (narrowly) rejected such challenges, it has, in the course of adopting a highly

5   formalistic approach[7] to the problems posed by the instructions, endorsed many of the substantive arguments

6   raised by the defendants in those cases.  The district court's instructions cannot be reconciled with the role

7   of the grand jury as set forth in Navarro-Vargas II.

8          For instance, with respect to the grand jury's relationship with the prosecution, the Navarro-

9   Vargas II majority acknowledges that the two institutions perform similar functions: "'the public prosecutor,

10  in deciding whether a particular prosecution shall be instituted or followed up, performs much the same

11  function as a grand jury.'"  Navarro-Vargas II, 408 F.3d at 1200 (quoting Butz v. Economou, 438 U.S. 478,

12  510 (1978)).  Accord Navarro-Vargas I, 367 F.3d at 900 (Kozinski, J., dissenting) (The grand jury's

13  discretion in this regard "is most accurately described as prosecutorial.").  See also Navarro-Vargas II, 408

14  F.3d at 1213 (Hawkins, J., dissenting).  It recognizes that the prosecutor is not obligated to proceed on any

15  indictment or presentment returned by a grand jury, id., but also that "the grand jury has no obligation to

16  prepare a presentment or to return an indictment drafted by the prosecutor."  Id.  See Niki Kuckes, The

17  Democratic Prosecutor:  Explaining the Constitutional Function of the Federal Grand Jury, 94 Geo. L.J.

18  1265, 1302 (2006) (the grand jury's discretion not to indict was "'arguably . . . the most important attribute

19  of grand jury review from the perspective of those who insisted that a grand jury clause be included in the

20  Bill of Rights'") (quoting Wayne LaFave et al., Criminal Procedure § 15.2(g) (2d ed. 1999)).

21         Indeed, the Navarro-Vargas II majority agrees that the grand jury possesses all the attributes

22  set forth in Vasquez v. Hillery, 474 U.S. 254 (1986).  See id.

23              The grand jury thus determines not only whether probable cause exists, but
                also whether to "charge a greater offense or a lesser offense; numerous counts
24              or a single count; and perhaps most significant of all, a capital offense or a
                non-capital offense -- all on the basis of the same facts.  And, significantly, the
25

26         _____

27         [7]   See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (criticizing the majority
    because "[t]he instruction's use of the word 'should' is most likely to be understood as imposing an inflexible
    'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence.").

28

grand jury may refuse to return an indictment even "'where a conviction can be obtained.'"

Id. (quoting Vasquez, 474 U.S. at 263). The Supreme Court has itself reaffirmed Vasquez's description of the grand jury's attributes in Campbell v. Louisiana, 523 U.S. 392 (1998), noting that the grand jury "controls not only the initial decision to indict, but also significant questions such as how many counts to charge and whether to charge a greater or lesser offense, including the important decision whether to charge a capital crime." Id. at 399 (citing Vasquez, 474 U.S. at 263).    Judge Hawkins notes that the Navarro-Vargas II majority accepts the major premise of Vasquez: "the majority agrees that a grand jury has the power to refuse to indict someone even when the prosecutor has established probable cause that this individual has committed a crime." See id. at 1214 (Hawkins, J. dissenting). Accord Navarro-Vargas I, 367 F.3d at 899 (Kozinski, J., dissenting); Marcucci, 299 F.3d at 1166-73 (Hawkins, J., dissenting). In short, the grand jurors' prerogative not to indict enjoys strong support in the Ninth Circuit. But not in Judge Burns' instructions.

**C.  The Instructions Forbid the Exercise of Grand Jury Discretion Established in Both *Vasquez* and *Navarro-Vargas II*.**

The Navarro-Vargas II majority found that the instruction in that case "leave[s] room for the grand jury to dismiss even if it finds probable cause," 408 F.3d at 1205, adopting the analysis in its previous decision in Marcucci. Marcucci reasoned that the instructions do not mandate that grand jurors indict upon every finding of probable cause because the term "should" may mean "what is probable or expected." 299 F.3d at 1164 (citation omitted). That reading of the term "should" makes no sense in context, as Judge Hawkins ably pointed out. See Navarro-Vargas II, 408 F.3d at 1210-11 (Hawkins, J., dissenting) ("The instruction's use of the word 'should' is most likely to be understood as imposing an inflexible 'duty or obligation' on grand jurors, and thus to circumscribe the grand jury's constitutional independence."). See also id. ("The 'word' should is used to express a duty [or] obligation.") (quoting *The Oxford American Diction and Language Guide* 1579 (1999) (brackets in original)).

The debate about what the word "should" means is irrelevant here; the instructions here make no such fine distinction. The grand jury instructions make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against

1  indicting even though I think that the evidence is sufficient'...." <u>See</u> Ex. A at 8-9. Thus, the instruction flatly

2  bars the grand jury from declining to indict because they disagree with a proposed prosecution. No grand

3  juror would read this language as instructing, or even allowing, him or her to assess "the need to indict."

4  <u>Vasquez</u>, 474 U.S. at 264.

5      Nor does the <u>Navarro-Vargas II</u> majority's faith in the structure of the grand jury a cure for

6  the instructions excesses. The <u>Navarro-Vargas II</u> majority attributes "[t]he grand jury's discretion -- its

7  independence -- [to] the absolute secrecy of its deliberations and vote and the unreviewability of its

8  decisions." 408 F.3d at 1200. As a result, the majority discounts the effect that a judge's instructions may

9  have on a grand jury because "it is the *structure* of the grand jury process and its *function* that make it

10  independent." <u>Id.</u> at 1202 (emphases in the original).

11      Judge Hawkins sharply criticized this approach. The majority, he explains, "believes that the

12  'structure' and 'function' of the grand jury -- particularly the secrecy of the proceedings and unreviewability

13  of many of its decisions -- sufficiently protects that power." <u>See id.</u> at 1214 (Hawkins, J., dissenting). The

14  flaw in the majority's analysis is that "[i]nstructing a grand jury that it lacks power to do anything beyond

15  making a probable cause determination ... unconstitutionally undermines the very structural protections that

16  the majority believes save[] the instruction." <u>Id.</u> After all, it is an "'almost invariable assumption of the law

17  that jurors follow their instructions.'" <u>Id.</u> (quoting <u>Richardson v. Marsh</u>, 481 U.S. 200, 206 (1987)). If that

18  "invariable assumption" were to hold true, then the grand jurors could not possibly fulfill the role described

19  in <u>Vasquez</u>. Indeed, "there is something supremely cynical about saying that it is fine to give jurors

20  erroneous instructions because nothing will happen if they disobey them." <u>Id.</u>

21      In setting forth Judge Hawkins' views, Mr. Castro understands that this Court may not adopt

22  them solely because the reasoning that supports them is so much more persuasive than the majority's

23  sophistry. Rather, he sets them forth to urge the Court *not to extend* what is already untenable reasoning.

24      Here, again, the question is not an obscure interpretation of the word "should", but an absolute

25  ban on the right to refuse to indict that directly conflicts with the recognition of that right in <u>Vasquez</u>,

26  <u>Campbell</u>, and both <u>Navarro-Vargas II</u> opinions. <u>Navarro-Vargas II</u> is distinguishable on that basis, but not

27  only that.

28

1    Judge Burns did not limit himself to denying the grand jurors the power that <u>Vasquez</u> plainly

2    states they enjoy.  He also apparently excused prospective grand jurors who might have exercised that Fifth

3    Amendment prerogative, excusing "three [jurors] in this case, because they could not adhere to [that]

4    principle...."  <u>See</u> Ex. A at 8.  The structure of the grand jury and the secrecy of its deliberations cannot

5    embolden grand jurors who are no longer there, likely because they expressed their willingness to act as the

6    conscience of the community.  <u>See</u> <u>Navarro-Vargas II</u>, 408 F.3d at 1210-11 (Hawkins, J., dissenting) (a grand

7    jury exercising its powers under <u>Vasquez</u> "serves ... to protect the accused from the other branches of

8    government by acting as the 'conscience of the community.'") (quoting <u>Gaither v. United States</u>, 413 F.2d

9    1061, 1066 & n.6 (D.C. Cir. 1969)).  The federal courts possess only "very limited" power "to fashion, on

10    their own initiative, rules of grand jury procedure," <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992), and,

11    here, Judge Burns has both fashioned his own rules and enforced them. The instructions here are therefore

12    structural error.  <u>See</u> <u>Navarro-Vargas II</u>, 408 at 1216-17 (Hawkins, J., dissenting).  The indictment must be

13    dismissed.

14    **D.      The Instructions Conflict With *Williams*' Holding that there Is No Duty to Present Exculpatory Evidence to the Grand Jury.**

15    In <u>Williams</u>, the defendant, although conceding that it was not required by the Fifth

16    Amendment, argued that the federal courts should exercise their supervisory power to order prosecutors to

17    disclose exculpatory evidence to grand jurors, or, perhaps, to find such disclosure required by Fifth

18    Amendment common law.  <u>See</u> 504 U.S. at 45, 51.  <u>Williams</u> held that "as a general matter at least, no such

19    'supervisory' judicial authority exists."  <u>See</u> <u>id.</u> at 47.  Indeed, although the supervisory power may provide

20    the authority "to dismiss an indictment because of misconduct before the grand jury, at least where that

21    misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved

22    by this Court and by Congress to ensure the integrity of the grand jury's functions,'" <u>id.</u> at 46 (citation

23    omitted), it does not serve as "a means of *prescribing* such standards of prosecutorial conduct in the first

24    instance." <u>Id.</u> at 47 (emphasis added).  The federal courts possess only "very limited" power "to fashion, on

25    their own initiative, rules of grand jury procedure." <u>Id.</u> at 50.  As a consequence, <u>Williams</u> rejected the

26    defendant's claim, both as an exercise of supervisory power and as Fifth Amendment common law.  <u>See</u> <u>id.</u>

27    at 51-55.

28

Despite the holding in <u>Williams</u>, the instructions here assure the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause.  <u>See</u> Ex. A at 20.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, *the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence*.

<u>Id.</u> (emphasis added).  Moreover, the district court later returned to the notion of the prosecutors and their duties, advising the grand jurors that they "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you."  <u>See</u> <u>id.</u> at 27.

This particular instruction has a devastating effect on the grand jury's protective powers, particularly if it is not true.  It begins by emphasizing the message that <u>Navarro-Vargas II</u> somehow concluded was not conveyed by the previous instruction: "You're all about probable cause."  <u>See</u> Ex. A at 20.  Thus, once again, the grand jury is reminded that they are limited to probable cause determinations (a reminder that was probably unnecessary in light of the fact that Judge Burns had already told the grand jurors that they likely would be excused if they rejected this limitation).  The instruction goes on to tell the grand jurors that they should consider evidence that undercuts probable cause, but also advises the grand jurors that the prosecutor will present it.  The end result, then, is that grand jurors should consider evidence that goes against probable cause, but, if none is presented by the government, they can  presume that there is none.  After all, "in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence."  <u>See</u> <u>id.</u>  Thus, if the exculpatory evidence existed, it necessarily would have been presented by the "duty-bound" prosecutor, because the grand jurors "can expect that the U.S. Attorneys that will appear in from of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you."  <u>See</u> <u>id.</u> at 27.

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists.  A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

1    (1) I have to consider evidence that undercuts probable cause.

2    (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such

3    evidence to me, if it existed.

4    (3) Because no such evidence was presented to me, I may conclude that there is none.

5    Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the

6    evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-

7    bound prosecutor would have presented it.

8    The instructions therefore discourage investigation -- if exculpatory evidence were out there,

9    the prosecutor would present it, so investigation is a waste of time -- and provide additional support to every

10    probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side

11    of the equation because it was not presented.  A grand jury so badly misguided is no grand jury at all under

12    the Fifth Amendment.

13    **II.**

14    **MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

15    As of the filing of these motions, the Government has provided no discovery to Mr.

16    Castro.  Mr. Castro moves for the production by the government of the following discovery and for the

17    preservation of evidence.  This request is not limited to those items that the prosecutor knows of, but

18    rather includes all discovery listed below that is in the custody, control, care, or knowledge of any

19    government agency.  See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868

20    F.2d 1032 (9th Cir. 1989).

21    (1)  The Defendant's Statements.  The Government must disclose to the defendant all

22    copies of any written or recorded statements made by the defendant; the substance of any statements

23    made by the defendant which the Government intends to offer in evidence at trial; any response by the

24    defendant to interrogation; the substance of any oral statements which the Government intends to

25    introduce at trial and any written summaries of the defendant's oral statements contained in the

26    handwritten notes of the Government agent; any response to any Miranda warnings which may have been

27    given to the defendant; as well as any other statements by the defendant.  Fed. R. Crim. P. 16(a)(1)(A),

28

1  and (B)(i), (ii), (iii).  The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear

2  that the Government must reveal <u>all</u> the defendant's statements, whether oral or written, regardless of

3  whether the government intends to make any use of those statements.  This request includes any

4  statements contained in Mr. Castro requests a copy of the A-file**.**

5  　　　　　(2) <u>Arrest Reports, Notes and Dispatch Tapes</u>.  The defense also specifically requests that

6  all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his

7  arrest or any questioning, if such reports have not already been produced <u>in their entirety</u>, be turned over

8  to him.  This request includes, but is not limited to, any rough notes, records, reports, transcripts or other

9  documents in which statements of the defendant or any other discoverable material is contained.  This is

10  all discoverable under Fed. R. Crim. P. 16(a)(1)(A),(D), and (E), and <u>Brady v. Maryland</u>, 373 U.S. 83

11  (1963).  <u>See also</u> <u>Loux v. United States</u>, 389 F.2d 911 (9th Cir. 1968).  Arrest reports, investigator's

12  notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports

13  pertaining to the defendant are available under Fed. R. Crim. P. 16(a)(1)(E), Fed. R. Crim. P. 26.2 and

14  12(i).  Preservation of rough notes is requested, whether or not the government deems them discoverable.

15  　　　　　(3) <u>Brady Material</u>.  Mr. Castro requests all documents, statements, agents' reports, and

16  tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of

17  the government's case.  Impeachment as well as exculpatory evidence falls within <u>Brady's</u> definition of

18  evidence favorable to the accused.  <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>,

19  427 U.S. 97 (1976).

20  　　　　　(4) <u>Any Information That May result in a Lower or Higher Sentence Under The</u>

21  <u>Guidelines</u>.  As discussed above, this information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83

22  (1963).  This request includes any cooperation or attempted cooperation by the defendant, as well as any

23  information that could affect any base offense level or specific offense characteristic under Chapter Two

24  of the Guidelines.  Also included in this request is any information relevant to a Chapter Three

25  adjustment, a determination of the defendant's criminal history, or any other application of the

26  Guidelines.

27

28

1    (5) <u>The Defendant's Prior Record</u>.  Evidence of prior record is available under Fed. R.

2    Crim. P. 16(a)(1)(D).  Counsel specifically requests a complete copy of any criminal record.

3    (6) <u>Any Proposed 404(b) Evidence</u>.  Evidence of prior similar acts is discoverable under

4    Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b),

5    "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . .

6    of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid.

7    404(b) at trial.  The defendant requests that such notice be given three weeks before trial in order to give

8    the defense time to adequately investigate and prepare for trial.

9    (7) <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a

10   warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

11   (8) <u>Request for Preservation of Evidence</u>.  The defense specifically requests that all

12   dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the

13   possession, custody, or care of the government and which relate to the arrest or the events leading to the

14   arrest in this case be preserved.  This request includes, but is not limited to, <u>all persons who were</u>

15   <u>apprehended as passengers in the van at issue in the instant case</u>, the results of any fingerprint analysis,

16   the defendant's personal effects, the vehicle, and any other evidence seized from the defendant or any

17   third party.  It is requested that the government be ordered to <u>question</u> all the agencies and individuals

18   involved in the prosecution and investigation of this case to determine if such evidence exists, and if it

19   does exist to inform those parties to preserve any such evidence.

20   (9) <u>Tangible Objects</u>.  The defense requests, under Fed. R. Crim. P. 16(a)(1)(E) the

21   opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects,

22   including photographs, books, papers, documents, photographs of buildings or places or copies of

23   portions thereof which are material to the defense or intended for use in the government's case-in-chief or

24   were obtained from or belong to the defendant.  Specifically, Mr. Castro requests a copy of the videotape

25   interview of the material witness, if one exists.

26   (10) <u>Evidence of Bias or Motive to Lie</u>.  The defense requests any evidence that any

27   prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify

28

1  or distort his or her testimony.  <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>United States v. Strifler</u>, 851

2  F.2d 1197 (9th Cir. 1988).

3          (11)  <u>Impeachment evidence</u>.  Mr. Castro requests any evidence that any prospective

4  government witness has engaged in any criminal act whether or not resulting in a conviction and whether

5  any witness has made a statement favorable to the defendant.  <u>See</u> Fed. R. Evid. 608, 609, and 613.  Such

6  evidence is discoverable under <u>Brady v. Maryland</u>, <u>supra</u>.  <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197

7  (9th Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence

8  that detracts from a witness' credibility).

9          (12)  <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defense

10  requests any evidence that any prospective witness is under investigation by federal, state or local

11  authorities for any criminal conduct.  <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

12          (13)  <u>Evidence Affecting Perception, Recollection, Ability to Communicate</u>.  Mr. Castro

13  requests any evidence, including any medical or psychiatric report or evaluation, tending to show that

14  any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and

15  any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an

16  alcoholic.  <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988); <u>Chavis v. North Carolina</u>, 637 F.2d

17  213, 224 (4th Cir. 1980).

18          (14)  <u>Witness Addresses</u>.  The defense requests the name and last known address of each

19  prospective government witness.  <u>See</u> <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United</u>

20  <u>States v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is

21  ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979)) (defense has equal right to talk

22  to witnesses).  The defendant also requests the name and last known address of every witness to the

23  crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be

24  called as a government witness.  <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

25          (15)  <u>Name of Witnesses Favorable to the Defendant</u>.  Mr. Castro requests the name of any

26  witness who made any arguably favorable statement concerning the defendant or who could not identify

27  him or who was unsure of his identity, or participation in the crime charged.  <u>Jackson v. Wainwright</u>, 390

28

1   F.2d 288 (5th Cir. 1968); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 223 (4th Cir. 1980); <u>Jones v. Jago</u>, 575

2   F.2d 1164, 1168 (6th Cir.), <u>cert. denied</u>, 439 U.S. 883 (1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th

3   Cir. 1979), <u>cert. denied</u>, 444 U.S. 1086 (1980).

4              (16) <u>Statements Relevant to the Defense</u>.  Mr. Castro requests disclosure of any statement

5   that may be "relevant to any possible defense or contention" that he might assert.  <u>United States v.</u>

6   <u>Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982).  This would include Grand Jury transcripts which are relevant

7   to the defense motion to dismiss the indictment.

8              (17) <u>Jencks Act Material</u>.  The defense requests all material to which Mr. Castro is entitled

9   pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes.  A

10  verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is

11  sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  <u>Campbell v. United States</u>,

12  373 U.S. 487, 490-92 (1963).

13             (18) <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the

14  defendant requests all statements and/or promises, expressed or implied, made to any government

15  witnesses, in exchange for their testimony in this case, and all other information which could arguably be

16  used for the impeachment of any government witnesses.

17             (19) <u>Reports of Scientific Tests or Examinations</u>.  Pursuant to Fed. R. Crim. P.

18  16(a)(1)(F), the defendant requests the reports of all tests and examinations conducted upon the evidence

19  in this case. Including, but not limited to, any fingerprint testing done upon any evidence seized in this

20  case, that is within the possession, custody, or control of the government, the existence of which is

21  known, or by the exercise of due diligence may become known, to the attorney for the government, and

22  which are material to the preparation of the defense or are intended for use by the government as

23  evidence in chief at the trial.

24             (20) <u>Henthorn Material</u>.  The defense requests that the prosecutor review the personnel

25  files of the officers involved in his arrests, and those who will testify, and produce to him any

26  exculpatory information at least two weeks prior to trial and one week prior to the motion hearing.  <u>See</u>

27  <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).  In addition, he requests that if the government is

28

1  uncertain whether certain information is to be turned over pursuant to this request, that it produce such

2  information to the Court in advance of the trial and the motion hearing for an in camera inspection.

3       (21) Informants and Cooperating Witnesses.  Mr. Castro requests disclosure of the names

4  and addresses of all informants or cooperating witnesses used or to be used in this case.  The government

5  must disclose the informant's identity and location, as well as disclose the existence of any other

6  percipient witness unknown or unknowable to the defense.  Roviaro v. United States, 353 U.S. 53, 61-62

7  (1957).  Mr. Castro also requests disclosure of any information indicating bias on the part of any

8  informant or cooperating witness.  Giglio v. United States, 405 U.S. 150 (1972).  Such information would

9  include inducements, favors, payments, or threats made to the witness to secure cooperation with the

10  authorities.

11       (22) Expert Witnesses.  The defendant requests disclosure of any expert witnesses the

12  government intends to call at trial and "a written summary of testimony that the government intends to

13  use," including the "witnesses' opinions, the bases and the reasons for those opinions" and his or her

14  qualifications.  Fed. R. Crim. P. 16(a)(1)(F).

15       (23) Residual Request.  The defense intends by this discovery motion to invoke his rights

16  to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the

17  Constitution and laws of the United States.  This request specifically includes all subsections of Rule 16.

18  Mr. Castro requests that the government provide him and his attorney with the above requested material

19  sufficiently in advance of trial.

20                                         **III.**

21                              **SUPPRESS STATEMENTS**

22  **A.**          **The Government Must Demonstrate Compliance With _Miranda_.**

23       1.  _Miranda_ Warnings Must Precede Custodial Interrogation.

24       The prosecution may not use statements, whether exculpatory or inculpatory, stemming from

25  a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective

26  to secure the privilege against self-incrimination.  Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also

27  Berkemer v. McCarty, 468 U.S. 420, 428 (1984) (restating Miranda principles).  Custodial interrogation is

28

1   questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

2   deprived of his freedom of action in any significant way.  Id.  See Orozco v. Texas, 394 U.S. 324, 327

3   (1969).

4       When the border patrol agent originally interrogated Mr. Castro, no reasonable person could

5   have felt free to leave.  Once a person is in custody, Miranda warnings must be given prior to any

6   interrogation.  See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980) (to trigger the

7   Miranda requirement not only must probable cause exist but also a person must reasonably believe that he

8   is not free to leave).  Those warnings must advise the defendant of each of his or her "critical" rights.  United

9   States v. Bland, 908 F.2d 471, 474 (9th Cir. 1990).  If a defendant indicates that he wishes to remain silent

10   or requests counsel, the interrogation must cease.  Miranda, 384 U.S. at 474.  See also Edwards v. Arizona,

11   451 U.S. 477, 484 (1981).

12   **B.**     **Mr. Castro's Statements Were Involuntary.**

13       Even when the procedural safeguards of Miranda have been satisfied, a defendant in a

14   criminal case is deprived of due process of law if his conviction is founded upon an involuntary confession.

15   Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387

16   (1964).  The government bears the burden of proving that a confession is voluntary by a preponderance of

17   the evidence.  Lego v. Twomey, 404 U.S. 477, 483 (1972).

18       In order to be voluntary, a statement must be the product of a rational intellect and free will.

19   Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  In determining whether a defendant's will was overborne

20   in a particular case, the totality of the circumstances must be considered.  Schneckloth v. Bustamonte, 412

21   U.S. 218, 226 (1973).

22       A confession is deemed involuntary if coerced by physical intimidation or psychological

23   pressure.  Townsend v. Sain, 372 U.S. 293, 307 (1963).  "The test is whether the confession was 'extracted

24   by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by

25   the exertion of any improper influence.'"  Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United

26   States, 168 U.S. 532, 542-43 (1897)).  Accord United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

27   The government bears a heavy burden in demonstrating that  a confession is voluntary and the finding of

28

1 voluntariness "'must appear from the record with unmistakable clarity.'" <u>Davidson</u>, 768 F.2d at 1270. Here,

2 such a finding cannot be made.

3 **C.        This Court Should Conduct An Evidentiary Hearing.**

4 This Court should conduct an evidentiary hearing to determine whether Mr. Castro's

5 statements should be admitted into evidence. Under 18 U.S.C. § 3501(a), this Court is required to determine,

6 outside the presence of the jury, whether any statements made by Mr. Castro were voluntary. In addition,

7 § 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Castro

8 understood the nature of the charges against him and whether he understood his rights. Without evidence,

9 this Court cannot adequately consider these statutorily mandated factors.

10 Moreover, section 3501(a) requires this Court to make a factual determination. Where a

11 factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12. <u>See</u>

12 <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are

13 often as important as the trial itself,'" <u>id.</u> at 610 (quoting <u>Waller v. Georgia</u>, 467 U.S. 39, 46 (1984)), these

14 findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence

15 in a prosecutor's responsive pleading.

16 **IV.**

17 **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

18 To date, Mr. Castro and defense counsel have received no discovery from the government.

19 It is anticipated that as new information comes to light, the defense will likely find it necessary to file further

20 motions. Therefore, it is requested that defense counsel be allowed the opportunity to file further motions

21 based upon information gained through the discovery process.

22 **V.**

23 **CONCLUSION**

24 For the reasons stated above, Mr. Castro moves this Court to grant his motions.

25 Respectfully submitted,

26 _/s/ Anthony E. Colombo Jr._

Dated: April 11, 2008      **ANTHONY E. COLOMBO JR.**
27 Attorney for Mr. Castro
anthonycolombolegal@yahoo.com

28