1  **ANTHONY E. COLOMBO JR.**
   California Bar No. 218411
2  The Senator Building
   105 West "F" Street Suite 310
3  San Diego, California 92101
   Telephone: (619) 236-1704
4  Email: anthonycolombolegal@yahoo.com

5  Attorney for Mr. Castro

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                  **(HONORABLE THOMAS J. WHELAN)**

11  UNITED STATES OF AMERICA,        )   CASE NO.: 08CR0881-W
                                      )
12              Plaintiff,            )   DATE: September 17, 2008
                                      )   TIME: 9:00 a.m.
13  v.                                )
                                      )   STATEMENT OF FACTS AND
14  **EDUARDO CASTRO**,               )   MEMORANDUM OF POINTS AND
                                      )   AUTHORITIES IN SUPPORT OF MOTIONS
15              Defendant.            )   AND MOTIONS IN LIMINE
    _____ )

16

17                              **I.**

18                     **STATEMENT OF FACTS**

19      Mr. Castro is charged by indictment with being a deported alien found in the United States in

20  violation of 8 U.S.C. §1326. This motion incorporates the facts included in Mr. Castro's previously filed

21  motions.

22                              **II.**

23  **THE GOVERNMENT MUST BE PRECLUDED FROM USING DEPORTATION
    DOCUMENTS AT TRIAL TO PROVE ALIENAGE**

24

25  **A.    The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish
           the Fact of the Deportation, Not Alienage**

26

27      Mr. Castro expects that the government will seek to introduce a warrant of deportation and an order

28  of deportation to establish the fact of his deportation. These two documents are admissible *only*

1  to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir.

2  1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of

3  deportation nor the order of deportation reflect the "objective, ministerial fact" of alienage; accordingly,

4  neither are admissible under Federal Rule of Evidence 803(8)(B) to establish the fact of alienage. As the

5  Ninth Circuit has explained:

6  **Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden**

7  **of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.** The use of a deportation order to prove the element of

8  alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it

9  more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

10

11  United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Simply put, alienage

12  is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing,

13  and the order of deportation reflects the quintessential "factual finding" rendered after an administrative

14  hearing. Likewise, the warrant of deportation reflects only that an immigration judge found Mr. Castro to

15  be an alien after an administrative hearing, and that Mr. Castro may have been removed from the United

16  States after that deportation—it has no bearing whatsoever on the fact of alienage. Accordingly, the warrant

17  of deportation and order of deportation are not admissible under Federal Rule of Evidence 803(8) or Federal

18  Rule of Evidence 401 to establish the fact of alienage.[1]

19  //

20

21

22  [1] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Federal Rule of Evidence 803(8)(B) to

23  establish the fact of alienage. Because the court failed to set forth any reasoned discussion, failed to discuss the decision in Medina, and did not specify which documents from the A-file were admitted in Mr.

24  Hernandez-Herrera's case, see id., this case is not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring

25  "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding

26  "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Federal Rules of Evidence 401 or 403 or the Fifth and Sixth

27  Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having

28  been so decided as to constitute precedent").

1  Finally, to the extent that this Court finds that these documents are relevant under Federal Rule of

2  Evidence 401, these documents should still be excluded pursuant to Federal Rule of Evidence 403, because

3  their probative value is substantially outweighed by their prejudicial effect.  Both the order of deportation

4  and warrant of deportation make reference to an "alien;" even more troubling, in the context of these

5  documents, the term "alien" is associated *with* Mr. Castro, who presumably is the "alien" to which the

6  documents refer. In the face of these quasi-official government documents proclaiming Mr. Castro to be an

7  "alien," there is a real danger that jurors will no longer see the alienage element of 8 U.S.C. § 1326 as an

8  open question that the government must prove beyond a reasonable doubt.

9  Therefore, should the Court nonetheless admit these documents, Mr. Castro requests that this Court

10 instruct the jury, pursuant to Federal Rule of Evidence 105, that it may only consider the warrant of

11 deportation and the order of deportation to establish the fact of the deportation and for no other purpose, and

12 that these documents do not, in and of themselves, establish the fact of alienage.  Mr. Castro further requests

13 that this Court redact these documents to exclude any reference to his alleged alienage.

14 **B.    None of the Other A-File Documents Are Admissible Under Any Rule of Evidence**

15 Mr. Castro anticipates that the government may seek to admit other documents from the A-file,

16 including the order to show cause why a person should not be deported and warnings regarding the possible

17 penalties for reentry.  None of these documents from the A-file are admissible to establish any matter at issue

18 in this trial.  All documents from the A-file—except the warrant of deportation and the order of deportation

19 discussed previously—are irrelevant under Federal Rule of Evidence 401; more prejudicial than probative,

20 cumulative, and a waste of time under Federal Rule of Evidence 403; and inadmissible hearsay under

21 Federal Rule of Evidence 803(8).

22 1.    The Notice to Appear Is Inadmissible.

23 The Notice to Appear is inadmissible under Rules 401, 403, and 803(8) of the Federal Rules of

24 Evidence.  The Notice to Appear is a document that provides an alien with *notice* of the grounds for

25 removal.  It does not record the "objective, ministerial fact" of alienage or of a deportation any more than

26 an indictment provides an objective observation that a person committed a crime.  This document is nothing

27 more than an *accusation* that the government must prove in an immigration proceeding. Therefore the Notice

28 to Appear should be inadmissible at trial.

2.    The Warnings of Possible Penalties Is Inadmissible.

Likewise, the warning of possible penalties is inadmissible under Federal Rules of Evidence 401, 403, and 803(8).  The warning of possible penalties contains boilerplate statements (drafted by the former INS) regarding the penal consequences to an alien who illegally reenters the country.  It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This document contains inadmissible hearsay, and is completely irrelevant.  It is also more prejudicial than probative.  Among other things, given the serious consequences listed on the warning of possible penalties, jurors may be led to speculate as to what this defendant did to be subject to such harsh penalties upon reentry.  Clearly, such speculation is completely irrelevant to the charge at hand and could be severely prejudicial.  Accordingly, the warnings of possible penalties also must be excluded at trial.

3.    If This Court Finds That These Documents Are Somehow Relevant,  They Are Not Admissible to Establish Alienage; Thus, This Court Should Order The Documents Redacted And Provide The Jury With A Limiting Instruction

To the extent that this Court finds any A-file document relevant to some point, the document is not admissible to establish Mr. Castro's alienage.  Accordingly, this Court should redact these documents to exclude (1) any mention that Mr. Castro was previously convicted of any crime, including the listing of his address as any penal institution; see Fed. R. Evid. 403 and 404(b); (2) any reference to Mr. Castro using an alias, or any mention that Mr. Castro has used an alias; see Fed. R. Evid. 403 ; and (3) any reference to Mr. Castro as an "alien," because that is an issue for the jury to decide. Additionally, the Court should instruct the jury as to the limited value of such documents pursuant to Federal Rule of Evidence 105.

**C.    This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to Protect Mr. Castro's Constitutional Rights**

Finally, this Court must preclude the admission of A-file documents to establish the fact of alienage to protect Mr. Castro's constitutional right to confront witnesses and to a jury trial based upon proof beyond a reasonable doubt—rights guaranteed by the Fifth and Sixth Amendments.  Because the right to confrontation is not applicable in immigration proceedings, the government may have met its burden of proving alienage in an immigration proceeding based upon otherwise inadmissible hearsay. Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir. 1988).  Similarly, because a criminal defendant such as Mr. Castro never had the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have

08CR0881-W

1    relied, the admission of the (former) INS' evaluation of alienage deprives a defendant of his right to confront

2    the witnesses against him. See Crawford v. Washington, 541 U.S. 36 (2004) (holding that admission of

3    testimonial statements of a witness who does not appear at trial and who the defendant did not have a prior

4    opportunity to cross-examine violates the confrontation clause of the Sixth Amendment).

5        Additionally, in immigration proceedings, the government need only establish alienage by clear and

6    convincing evidence. Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995). Once the government has

7    established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance

8    of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the

9    lower burden of proof and the shifting presumption, the admission of A-file documents against a criminal

10   defendant to establish the fact of alienage has the effect of lowering the government's burden of proving

11   alienage in the criminal trial.

12       Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence

13   of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue

14   weight or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations

15   omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made

16   by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair

17   prejudice'"); Fed. R. of Evid. 803(22), Advisory Committee Note (observing that "it seems safe to assume

18   that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a

19   satisfactory explanation"). The government's introduction of a government agency's finding of alienage to

20   establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval. The

21   admission of this factual finding undermines a defendant's constitutional right to a reliable jury finding of

22   an essential element.

23       In sum, because the A-file documents are generated by the government without the constitutional

24   safeguards surrounding criminal proceedings, it is unconstitutional to authorize their admission, as evidence

25   of alienage, in a criminal prosecution. This Court should exclude these documents in their entirety; or, to

26   the extent the Court finds that these documents are admissible to prove some other fact, it should redact

27   these documents to exclude reference to Mr. Castro's alienage and instruct the jury as to the documents'

28   limited relevance.

1

2    **III.**

3    **THE CERTIFICATE OF NONEXISTENCE OF RECORD IS INADMISSIBLE BECAUSE IT VIOLATES THE CONFRONTATION CLAUSE OF THE CONSTITUTION AND ALLOWS THE GOVERNMENT TO CIRCUMVENT ITS DISCOVERY OBLIGATIONS**

4    The government may seek to produce and introduce a Certificate of Nonexistence of Record

5    (hereinafter "CNER") to establish that Mr. Castro did not obtain permission for admission into the United

6    States.  This document is inadmissible both because it violates the Confrontation Clause of the Sixth

7    Amendment. Crawford v. Washington, 541 U.S. 36 (2004) (holding that admission of testimonial statements

8    of a witness who does not appear at trial and who the defendant did not have a prior opportunity to cross-

9    examine violates the confrontation clause); but see United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir.

10    2005) (holding that CNER is non-testimonial).

11    Additionally, the failure to have this witness testify at trial and allow the admission of the CNER is

12    an attempt by the Government to circumvent its discovery obligations under Brady v. Maryland, 373 U.S.

13    83 (1963), Giglio v. U.S., 405 U.S. 150 (1972) and the Jenks Act, 18 U.S.C.§ 3500, et seq.  If the declarant

14    were to appear at trial to testify, Mr. Castro would undoubtedly be entitled to discovery material, including

15    impeachment evidence against that declarant and her own prior statements and certain other documents, in

16    addition to being entitled to exercise the constitutional right of cross-examination.  If the Court does allow

17    the admission of the CNER, Mr. Castro requests production of any and all discoverable material to which

18    he would be entitled were this witness to testify at trial.

19    **IV.**

20    **THIS COURT SHOULD PRECLUDE ANY EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 404(B) AND 609 BECAUSE THE GOVERNMENT HAS NOT PROVIDED**

21    **ADEQUATE NOTICE OF OTHER CRIMES, WRONGS OR ACTS**

22    **A.    Exclusion of Other Acts Evidence Under Rules 404(b) and 403.**

23    Federal Rule of Evidence 404(b) strictly forbids the use of evidence of prior crimes or bad acts

24    merely to prove bad character.  United States v. Garcia-Orozco, 997 F.2d 1302, 1303-04 (9th Cir. 1993).

25    The use of evidence pursuant to this rule "must be narrowly circumscribed and limited" and "may not be

26    introduced unless the government establishes its relevance to an actual issue in the case."  Id. at 1304 (citing

27    United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985)).  The purpose of Rule 404(b) is to "avoid a

28    danger that the jury will punish the defendant for offenses other than those charged, or at least that it will

1  convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of

2  punishment." United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991). The government carries the burden

3  of showing how any other acts evidence is relevant to one or more issues in the case. It "must articulate

4  precisely *the evidential hypothesis* by which a fact of consequence may be inferred from the other acts

5  evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v.

6  Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v.

7  Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993).

8       Because of the probative value of this evidence is typically outweighed by the danger of unfair

9  prejudice, Fed. R. Evid. 403, the government is required to provide "reasonable notice in advance of trial"

10  of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed. Evid. 404(b). Timely notice

11  of such evidence is not only a condition precedent to the admission of such evidence, but also critical so that

12  Mr. Castro may adequately prepare his defense. The notice requirement is triggered when timely requested

13  by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Mr. Castro timely

14  requested notice of proposed Rule 404(b) evidence in his motion to compel discovery. To date, the

15  Government has not provided any notice of any proposed Rule 404(b) evidence it intends to introduce at

16  trial. Because the government has failed to provide adequate notice of other crimes, wrongs, or acts

17  allegedly committed by Mr. Castro,  let alone articulate the precise evidential hypothesis by which this

18  evidence will be admitted, this Court should exclude any evidence the government seeks to introduce under

19  Rule 404(b).

20  **B.    Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

21       Federal Rule of Evidence 609(a)(1) restricts impeachment of the accused by evidence of a prior

22  conviction to those offenses for which the court determines that the probative value outweighs its prejudicial

23  effect to the accused.  The government should be precluded from introducing any evidence of Mr. Castro's

24  prior conviction, as it is irrelevant under Federal Rule of Evidence 401 and prejudicial under Federal Rule

25  of Evidence 403.  Even if Mr. Castro were to testify at trial, the danger of unfair prejudice would

26  substantially outweigh any possible relevance of his prior offense.  See Fed. R. Evid. 401, 403, 609.

27       To the extent that this Court rules that Mr. Castro's prior conviction is admissible under Rule 609,

28  this Court should redact any documents referencing, and preclude the prosecutor from referring to, the

1  offense and specific facts of any crime for which Mr. Castro was convicted. Such information would be

2  more prejudicial than probative of Mr. Castro's guilt of the charged offense. <u>See</u> Fed. R. Evid. 401, 403, 609.

3                                                    **V.**

4  **THIS COURT SHOULD PRECLUDE EXPERT TESTIMONY BECAUSE MR. CASTRO WAS
   NOT GIVEN NOTICE AS REQUIRED BY FEDERAL RULE OF CRIMINAL PROCEDURE**

5  **16(A)(1)(E)**

6        Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that "[a]t the defendant's request, the

7  government shall disclose to the defendant a written summary of testimony that the government intends to

8  use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . . The

9  summary provided under this subdivision shall describe the witnesses' opinions, the bases and the reasons

10 for those opinions, and the witnesses' qualifications." The obligation to provide this material is ongoing,

11 continuing prior to and during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with the discovery

12 rules set forth in Rule 16, exclusion is a proper remedy. Fed. R. Crim. P. 16(d)(2). <u>See</u> <u>also</u> Advisory

13 Committee Notes to 1997 Amendment (asserting that "[u]nder rule 16(a)(1)(E), as amended in 1993, the

14 defense is *entitled* to disclosure of certain information about expert witnesses which the government intends

15 to call during the trial" (emphasis added).

16       Mr. Castro filed a Motion to Compel Discovery requested that the government disclose its expert

17 witnesses per Rule 16. Thus far, the government has not given any notice regarding expert testimony. This

18 Court therefore should exclude any expert witness from testifying in order to give effect to the discovery

19 requirements of Rule 16 and afford Mr. Castro the opportunity to prepare his defense.

20                                                   **VI.**

21 **THE COURT SHOULD PRECLUDE ADMISSION OF DOCUMENTS NOT YET PRODUCED
   IN DISCOVERY AND SHOULD REQUIRE THE GOVERNMENT TO COMPLY WITH THE**

22 **NOTICE REQUIREMENTS OF RULE 16 (d)(2)**

23       Pursuant to Rule 16(d)(2), Mr. Castro requests that the Court prohibit the introduction of any

24 documents not yet produced in discovery. Additionally, pursuant to Federal Rule of Criminal Procedure 16

25 (d)(2), Mr. Castro requests that the Court order the Government to provide him with prompt written notice

26 of its intention to use any discoverable evidence in its case-in-chief.

27

28

## VII.

## THIS COURT SHOULD SUPPRESS AND EXCLUDE THE DEPORTATION HEARING AUDIOTAPE OR TRANSCRIPT

The Court must exclude any deportation hearing audiotape or transcript of any deportation proceedings because they would contain non-Mirandized statements made by Mr. Castro in response to custodial interrogation. Questions asked in a custodial setting constitute interrogation if, under all the circumstances, the questions are "reasonably likely to elicit an incriminating response from the suspect." United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1982) (citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). In Mathis v. United States, 391 U.S. 1 (1968), the Supreme Court held that the defendant's statements to a revenue agent who was conducting a routine tax investigation were the product of custodial interrogation within the meaning of Miranda despite the fact that the agent's questioning was part of the routine tax investigation where no criminal proceedings could have even been brought and the defendant was in jail on an entirely separate offense. Id. at 4. The Court stated that "[t]hese differences are too minor and shadowy to justify a departure from the well-considered conclusions of Miranda with reference to warnings to be given to a person held in custody." Id.

In the immigration context, the 9th Circuit has stated: "[i]f civil investigations by the INS were excluded from the Miranda rule, INS agents could evade that rule by labeling all investigations as civil. Civil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983). In Mata-Abundiz, an INS investigator interviewed the defendant at a local jail, where he was being held on state charges, as part of a routine civil investigation without a prior Miranda advisement. In a subsequent federal prosecution for possession of a firearm by an alien, the district court permitted the government to introduce the defendant's statement to the INS investigator concerning his Mexican citizenship. This Court reversed the defendant's conviction recognizing that "the investigator cannot control the constitutional question by placing a 'civil' label on the investigation." Id. at 1280.

Moreover, the Ninth Circuit in Mata-Abundiz rejected the government's argument that the questioning fell within the exception to the Miranda requirements for routine background questioning attendant to arrest and booking. See United States v. Booth, 669 F.2d at 1237-38. In Booth, the 9th Circuit

1  stated: "Ordinarily, the routine gathering of background, biographical data will not constitute interrogation.

2  Yet we recognize the potential for abuse by law enforcement officers who might, under the guise of seeking

3  'objective' or 'neutral' information, deliberately elicit an incriminating statement from a suspect." Booth,

4  669 F.2d at 1238.  The Court applied this objective test to Mata-Abundiz and found that the "background

5  questions" related directly to an element of the offense to which the defendant was suspected and the

6  questions were likely to elicit an incriminating response.  Mata-Abundiz, 717 F.2d at 1280.

7  Like the questioning in Mathis and Mata-Abundiz, the questioning by the immigration judge in this

8  case was "reasonably likely to elicit an incriminating response" within the meaning of Booth.  All of

9  Mr. Castro's statements were made in response to direct questioning by government officials.  The

10  questioning concerned Mr. Castro's place of birth, citizenship, and manner of entry into the United States.

11  Federal law provides for criminal penalties to aliens who illegally enter the United States, see 8 U.S.C.

12  §1325, and to aliens who illegally reenter the United States following deportation, see 8 U.S.C. § 1326.

13  Therefore, Mr. Castro's responses to these questions could have incriminated him and thus should not be

14  admitted against him absent Miranda warnings.

15  In United States v. Solano-Godines, 120 F.3d 957, 961 (9th Cir. 1997), the government brought

16  criminal charges against the defendant, Mr. Solano, for illegal reentry after a deportation. Id. at 959. Two

17  years before, Mr. Solano appeared at a civil deportation hearing at which he made statements about his place

18  of birth and citizenship. Id. Mr. Solano was not given Miranda warnings prior to making these statements.

19  Id. Prior to trial, Mr. Solano filed a motion to suppress the statements at his deportation hearing. Id. at 960.

20  The district court denied the motion and Mr. Solano entered a conditional plea agreement. Id. On appeal,

21  the Ninth Circuit held that Miranda warnings were not required in that case because the immigration judge

22  "could not be expected to anticipate that two years later Solano would illegally reenter the United States and

23  that his responses to questions at his civil deportation hearing might incriminate him in a prosecution for

24  this future crime." Id. at 962.

25  The Ninth Circuit's holding and reasoning in Solano-Godines is inapplicable to this case.  In

26  particular, any statements made at any immigration hearings *after* he had already been previously deported

27  or removed from the United States should be excluded because Mr. Castro's responses to the immigration

28  judge could have subjected him to criminal prosecution at that time, not some unknown time in the future.

1  For that reason, the immigration judge should have advised him of his rights under <u>Miranda</u>.  Because

2  Mr. Castro's admission were made without the benefit of <u>Miranda</u> warnings, and because he was

3  affirmatively misled as to the consequence of making statements, his statements at the deportation hearing

4  must be excluded.  <u>See</u> <u>United States v. Alderete-Deras</u>, 743 F.2d 645, 648 (9th Cir. 1984) (noting that the

5  lack of <u>Miranda</u> warnings at a civil deportation hearing might render statements made at the hearing

6  inadmissible in a subsequent criminal trial).

7  **VIII.**

8  **THIS COURT SHOULD PRECLUDE THE A-FILE CUSTODIAN FROM TESTIFYING**<br>**ABOUT IMMIGRATION PROCEEDINGS**

9

10  Under the Fifth and Sixth Amendments, a defendant has a constitutional right to a fair trial and to

11  confront the witnesses against him.  Evidence must be relevant and not create confusion for the jury or be

12  unfairly prejudicial to the defendant. Fed. R. Evid. 401, 403. In addition, no lay witness is permitted to offer

13  an opinion or testify about specialized knowledge. Fed. R. Evid. 702, *et seq.*; <u>United States v.</u>

14  <u>Figueroa-Lopez</u>, 125 F.3d 1241, 1245 (9th Cir. 1997) (expert opinion need not be based upon highly

15  technical knowledge; it may be based upon knowledge which would be "unfamiliar" to "the ordinary juror").

16  In this case, Mr. Castro expects that the Government will call the A-file custodian to establish the

17  foundation for the admission of selected documents from Mr. Castro's A-file.  It is also expected that the

18  Government will ask the A-file custodian how immigration proceedings work.  Such testimony is

19  inadmissible under Federal Rules of Evidence 401, 403, 702, 802, and its admission would violate

20  Mr. Castro's rights to a fair trial and confrontation of witnesses under the Fifth and Sixth Amendments.  It

21  is unlikely that the A-file custodian has participated in deportation proceedings as either an immigration

22  judge or an immigration attorney and thus he would not be testifying from his own personal knowledge, but

23  from the hearsay statements of other people, who were not presented for cross-examination by Mr. Castro.

24  This Court should therefore preclude the A-file custodian from testifying about how immigration

25  proceedings work and about the significance of such documents. Rather, the A-file custodian's testimony

26  should be limited to laying a foundation for the admission of any A-file documents this Court admits into

27  evidence.

28

1

## IX.

2

### THE COURT SHOULD EXCLUDE THE A-FILE CUSTODIAN

3      Federal Rule of Evidence 615 directs the Court to exclude witnesses from the courtroom unless their

4   presence is shown "to be essential to the presentation of the party's cause. . ." or the person is authorized

5   by statute to be present. Fed. R. Evid. 615. The government has made no showing that the A-file custodian,

6   or case agent, is such a person. Traditionally, witnesses such as the A-file custodian do not participate in

7   the arrest or investigation of deported aliens other than to request and temporarily keep the accused's

8   immigration A-file. The government will use this witness as nothing more than a custodian to lay a

9   foundation for the admission of certain documents it considers relevant. The Court should treat this witness

10  as any other witness in this case and exclude him or her from trial.

11

## X.

12

### THIS COURT SHOULD PROHIBIT THE WITNESSES FROM REFERRING TO
### MR. CASTRO AS "THE ALIEN"

13

14      To convict Mr. Castro, the government must prove that he is an "alien." See 8 U.S.C. § 1326.

15  "Alien" is a legal term that must be defined by this Court. See Berry v. City of Detroit, 25 F.3d 1342 (6th

16  Cir. 1994) (responsibility of court, not testifying witnesses, to define legal terms); Fed. R. Evid. 704(a). It

17  is also a finding that the jury must make; thus, no witness is permitted to opine that this element has been

18  proved. See United States v. Espino, 32 F.3d 253, 257 (7th Cir. 1994) (question whether the defendant was

19  "admitting the conspiracy" was improper because it required a legal conclusion).

20      The government likely will call several witnesses from the Department of Homeland Security (DHS),

21  specifically, the A-file custodian, border patrol agents, and detention enforcement officers. Because the

22  DHS has accused Mr. Castro of being an alien, it is anticipated that these witnesses will refer to Mr. Castro

23  as "the alien." If these witnesses testify that Mr. Castro is an alien, it will create confusion among the jurors

24  regarding this Court's instructions on the law and what the government has—or has not—proven, in

25  violation of Federal Rule of Evidence 403. It will also subvert Mr. Castro's right to a jury finding of every

26  essential element—a right guaranteed by the Fifth and Sixth Amendments. Accordingly, this Court should

27  preclude the witnesses from referring to Mr. Castro as "the alien."

28

# XI.

## THIS COURT SHOULD ORDER PRODUCTION OF GRAND JURY TRANSCRIPTS

The Court should order production of grand jury transcripts if a witness who likely will testify at the trial of Mr. Castro also is likely to have testified before the grand jury. <u>Dennis v. United States</u>, 384 U.S. 855 (1966); Fed. R. Crim. R. 26.2(f)(3). The defense requests that the government make such transcripts available in advance of trial to facilitate the orderly presentation of evidence and to remove any need for recess in the proceedings for defense counsel to examine the statements pursuant to Federal Rule of Criminal Procedure 26.2(d).

# XII.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

As information comes to light, due to the government providing additional discovery in response to these motions or an order of this Court, Mr. Castro may find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

# XIII.

## CONCLUSION

For the foregoing reasons, Mr. Castro respectfully requests that the Court grant the above motions in limine.

Respectfully submitted,

Dated: August 28, 2008                    *s/ Anthony E. Colombo Jr.*
                                          ANTHONY E. COLOMBO JR.
                                          Attorney for Mr. Castro